**LAWRENCE W. FREIMAN, ESQ.**
Nevada Bar No. 10588
lawrence@freimanlegal.com
FREIMAN LEGAL
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
T: (310) 917-1004; F: (310) 300-2603
*Counsel for Plaintiff Felton Davis*

**LEAH MARTIN, ESQ.**
Nevada Bar No. 7982
LEAH MARTIN LAW
601 S. Rancho Dr., Ste. C-26
Las Vegas, Nevada 89106
Telephone: (702) 420-2733
lmartin@leahmartinglv.com
*Plaintiff's Designated Counsel for Service in Nevada Only*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| FELTON DAVIS, | |
| Plaintiff, | CASE NO.: |
| v. | **COMPLAINT** |
| CAESARS PALACE LLC; | **DEMAND FOR JURY TRIAL** |
| DOES 1 through 20, inclusive, | |
| Defendants. | |

COMPLAINT AND DEMAND FOR JURY TRIAL

1

Plaintiff FELTON DAVIS, for his Complaint against Defendant CAESARS PALACE LLC, and DOES 1 through 20, inclusive, alleges the following:

**PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff Felton Davis ('Plaintiff' or 'Davis') brings this action against Defendant Caesars Palace, LLC ('Caesars' or 'Defendant'), and DOES 1 through 20, inclusive (collectively, 'Defendants'), seeking damages and equitable relief for unlawful race discrimination and retaliation in violation of federal and state law.

2.    Plaintiff Felton Davis is an African American male who resides in Las Vegas, Nevada. At all times relevant herein, Davis was an employee of Defendant within the meaning of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

3.    Defendant Caesars Enterprise LLC is a Nevada limited liability company that operates the Caesars Palace hotel and casino, located at 3570 Las Vegas Boulevard South, Las Vegas, Nevada 89109. Upon information and belief, Defendant employs more than 500 employees overall, and is an 'employer' within the meaning of Title VII, 42 U.S.C. § 2000e(b).

4.    Plaintiff is informed and believes, and thereon alleges, that the fictitiously named Defendants sued herein as DOES 1 through 20, inclusive, are in some manner legally responsible for the acts and omissions alleged herein. Plaintiff will seek leave of Court to amend this Complaint to insert the true names of said DOE Defendants when ascertained.

5.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 42 U.S.C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), and 42 U.S.C. § 1981 (equal rights under the law). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices giving rise to this action occurred within

this judicial district, and Defendant maintains its principal place of business and transacts substantial business within this district.

7.    All conditions precedent to this action have been satisfied. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ('EEOC'), Charge No. 487-2026-01274, alleging race discrimination and retaliation. On February 10, 2026, the EEOC issued a Notice of Right to Sue. This Complaint is filed within 90 days of Plaintiff's receipt of the Right to Sue notice.

### STATEMENT OF FACTS

8.    Plaintiff Felton Davis is an African American male who was employed by Caesars at the Caesars Palace hotel and casino in Las Vegas, Nevada, from approximately May 10, 2012 through on or about October 2025, a tenure of approximately thirteen years.

9.    During his employment, Davis held the position of Banquet Bar Apprentice. Davis was the second most senior Bar Apprentice in his department, holding seniority over co-workers including Melissa Mara (the third most senior) and Jason Lee (the fourth most senior).

10.    Davis's position required significant physical labor, including manually setting up and pushing two-piece mobile bars into position across thick carpet, stocking each bar with glassware, beverages, ice, mixers, and garnishes, and breaking down and returning the bars to storage after events. This work was physically demanding and time-intensive.

11.    Davis earned approximately $20.00 per hour plus tips. His paychecks were issued by Caesars Enterprise LLC.

12.    Davis's last supervisor was Frank Alesi, who held the title of Banquet Beverage Supervisor. Alesi transferred to Caesars Palace from Paris Casino, a related property, in approximately May 2025. Problems for Davis began around the time of Alesi's arrival.

13.    On or about October 1, 2025, Caesars suspended Davis from employment.

COMPLAINT AND DEMAND FOR JURY TRIAL

14. Approximately two weeks after the suspension, Human Resources representative Anna Gutierrez called Davis in for a hearing. During the hearing, Gutierrez asked Davis several questions, including whether he remembered a shift where his co-worker Melissa Mara left early and Davis stayed to clean up and restock his mobile bar with glassware and product for the following day so that he would not have to rush and risk injuring himself.

15. During the hearing, Gutierrez claimed that she had observed Davis on camera footage taking 'unlimited breaks.' When Davis requested to view the camera footage himself, Gutierrez refused to allow him to see it.

16. Davis knew that Gutierrez's claim about 'unlimited breaks' was false. When Davis took breaks, he was typically with one or both of his co-workers, Melissa Mara and Jason Lee. If Gutierrez had actually observed Davis taking breaks on camera, she would have observed Mara and Lee doing the same. Despite this, Davis was the only employee subjected to discipline.

17. On or about October 1, 2025, Caesars terminated Davis's employment. The stated reason for Davis's termination was 'unauthorized overtime.'

18. The stated reason for Davis's termination was pretextual. Davis's co-workers, Melissa Mara and Jason Lee, engaged in the same or similar overtime practices but were not suspended, disciplined, or terminated. Davis, the African American employee with the most seniority among the three, was singled out for termination while his non-African American co-workers were retained.

19. Management could not credibly claim that it had authorized the overtime of Mara and Lee but not Davis, because Davis had greater seniority than both. As the number two Bar Apprentice, Davis held seniority over Mara (number three) and Lee (number four). There was no legitimate business reason to terminate Davis while retaining less senior employees who engaged in the same conduct.

20. Prior to his termination, one of Davis's managers, Frank Alesi, stated to Davis: 'That shit definitely runs downhill.' Upon information and belief, this statement

reflected that the decision to target and terminate Davis originated from higher management and was communicated down through the chain of command.

21.    At all times during his employment, Davis performed his job duties competently. Davis's work ethic was demonstrated by his practice of staying to properly clean, restock, and prepare his mobile bar for the next day's event so that he would not have to rush and risk injury.

22.    Davis's last paycheck was in the amount of approximately $2,100.00, received on or about November 10, 2025.

23.    Following his termination, Davis obtained employment at Allegiant Stadium in a security/on-call capacity, which does not provide the same level of compensation or benefits he received at Caesars.

24.    As a direct result of Caesars' unlawful conduct, Davis has suffered and continues to suffer damages including loss of wages and benefits, damage to his credit, migraine headaches, emotional distress, and difficulty providing for his 85-year-old mother and 17-year-old daughter. Davis has also lost his medical and car insurance as a result of his termination.

## **FIRST CAUSE OF ACTION**

### **Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

25.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

26.    Plaintiff Felton Davis is African American and is a member of a protected class under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

27.    Defendant Caesars Enterprise LLC is an 'employer' within the meaning of 42 U.S.C. § 2000e(b), employing 15 or more employees for each working day in each of 20 or more calendar weeks.

28.    Davis was qualified for his position as Banquet Bar Apprentice. He performed his job duties competently throughout his approximately thirteen-year tenure and held the second-highest seniority among Bar Apprentices in his department.

29.    Caesars subjected Davis to an adverse employment action by terminating his employment on or about October 2025.

30.    The circumstances of Davis's termination give rise to a strong inference of race discrimination. Davis was terminated for 'unauthorized overtime' while similarly situated co-workers, Melissa Mara and Jason Lee, who are not African American, engaged in the same overtime conduct but were not disciplined or terminated. Davis held greater seniority than both retained employees.

31.    Caesars' stated reason for Davis's termination, 'unauthorized overtime,' was pretextual. The same conduct was tolerated when performed by non-African American employees with less seniority. This selective enforcement of the overtime policy demonstrates that race was a motivating factor in the decision to terminate Davis.

32.    Plaintiff filed a timely Charge of Discrimination with the EEOC, Charge No. 487-2026-01274, and received a Right to Sue notice on February 10, 2026.

33.    As a direct and proximate result of Caesars' race discrimination, Davis has suffered damages including, but not limited to, loss of wages and benefits, emotional distress, damage to his credit and financial standing, loss of medical insurance, migraine headaches, and other consequential damages.

## SECOND CAUSE OF ACTION

### Race Discrimination in Violation of 42 U.S.C. § 1981

34.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

35.    42 U.S.C. § 1981 guarantees all persons the same right to make and enforce contracts, including employment contracts, as is enjoyed by white citizens.

36.    Davis is African American and had a contractual employment relationship with Caesars.

37.    Caesars intentionally discriminated against Davis on the basis of his race by terminating his employment while retaining similarly situated non-African American employees who engaged in the same conduct.

38.    Race was a but-for cause of Caesars' decision to terminate Davis. But for Davis's race, he would not have been singled out for termination for 'unauthorized overtime' while non-African American co-workers with less seniority who engaged in the same overtime practices were retained.

39.    As a direct and proximate result of Caesars' race discrimination in violation of 42 U.S.C. § 1981, Davis has suffered damages including, but not limited to, loss of wages and benefits, emotional distress, damage to his credit and financial standing, loss of medical insurance, migraine headaches, and other consequential damages.

40.    Davis is entitled to compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964,

### 42 U.S.C. § 2000e-3

41.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

42.    Davis engaged in protected activity under Title VII when he opposed Caesars' racially discriminatory treatment during the Human Resources investigation. Specifically, Davis challenged the basis for his suspension and the selective enforcement of the overtime policy against him, an African American employee, while non-African American co-workers were not subjected to the same scrutiny or discipline.

43.    Davis further engaged in protected activity when he requested to view the camera footage that HR representative Anna Gutierrez claimed showed him taking 'unlimited breaks,' thereby challenging the veracity and discriminatory nature of the allegations against him.

44.    After Davis challenged the basis for his suspension and the pretextual allegations during the HR hearing, Caesars terminated Davis's employment.

45.    The temporal proximity between Davis's protected activity and his termination demonstrates a causal connection between the two. Davis was terminated shortly after opposing Caesars' discriminatory treatment during the HR investigation.

46.    Caesars' stated reason for termination, 'unauthorized overtime,' was pretextual and was in retaliation for Davis's opposition to discriminatory treatment.

47.    Plaintiff filed a timely Charge of Discrimination with the EEOC, Charge No. 487-2026-01274, which included a claim of retaliation, and received a Right to Sue notice on February 10, 2026.

48.    As a direct and proximate result of Caesars' retaliation, Davis has suffered damages including, but not limited to, loss of wages and benefits, emotional distress, and other consequential damages.

COMPLAINT AND DEMAND FOR JURY TRIAL

## FOURTH CAUSE OF ACTION

### Race Discrimination in Violation of NRS 613.330

49.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50.    Nevada Revised Statutes § 613.330 makes it unlawful for an employer to discharge or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of the individual's race.

51.    Davis is African American and is a member of a protected class under NRS 613.330.

52.    Caesars discriminated against Davis on the basis of his race by terminating his employment for 'unauthorized overtime' while retaining similarly situated non-African American employees who engaged in the same conduct. This selective enforcement of workplace policies based on race violates NRS 613.330.

53.    As a direct and proximate result of Caesars' discrimination in violation of NRS 613.330, Davis has suffered damages including, but not limited to, loss of wages and benefits, emotional distress, damage to his credit and financial standing, loss of medical insurance, and other consequential damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Felton Davis respectfully requests that this Court enter judgment in his favor and against Defendants, and grant him the following relief:

1. Compensatory damages including back pay, front pay, and loss of benefits;

2. Damages for emotional distress, mental anguish, and physical manifestations thereof including migraine headaches;

3. Punitive damages against Defendants for their willful, malicious, and reckless conduct pursuant to 42 U.S.C. § 1981a and 42 U.S.C. § 1981;

4. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

5. Reasonable attorney's fees and costs of litigation pursuant to 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

6. Injunctive and declaratory relief as appropriate;

7. Such other and further relief as this Court deems just and proper.

Dated: March 31, 2026                                    By:  FREIMAN LEGAL

                                                        /s/ Lawrence W. Freiman
                                                        Lawrence W. Freiman, Esq.
                                                        Counsel for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff FELTON DAVIS demands a trial by jury on all issues in this action.

Dated: March 31, 2026.                                   By:  FREIMAN LEGAL

                                                        /s/ Lawrence W. Freiman
                                                        Lawrence W. Freiman, Esq.
                                                        Counsel for Plaintiff